334-1202 Regents of the University of California, Dakocytomation Regents of the University of California, Dakocytomation Regents of the University of California, Dakocytomation Regents of the University of California, Dakocytomation Regents of the University of California, Dakocytomation  Regents of the University of California, Dakocytomation  Regents of the University of California, Dakocytomation Regents of the University of California, Dakocytomation notes With respect to the first plane construction issue the claim term at issue is a heterogeneous mixture of labeled unique nucleic acid stars And that's the principle issue, the second case on plane superjugger, right? that was despotiable That's true It was But see, it's not I guess I'm glad you're arguing the two cases together because I was a bit confused I mean it seems to me, in the first case the PI were focusing on morphologically term If we were to, hypothetically If we were to construe that term as did the district court judge Why doesn't that also resolve the motion for summary judgment? I mean, suddenly a motion for summary judgment we're arguing all about heterogeneous But that other term appears in the patents If we were to read, hypothetically the district court judge under construction of that term does that dispose of both cases? It does not, it would actually resolve nothing because in our view under either construction of morphologically identified in the cell nucleus there are factual issues to be determined But isn't it unique in both patents? No, it's only in the 479 patent, your honor The 479 patent The 479 patent is in both cases Oh, I'm sorry, yes it is But the, that's true One on an on-printing question and the other on a preliminary injunction question That's true There's actually one exercise left I agree with that, your honor But I don't understand Just a minute ago, just post-question that there are, I understood you right that there are factual issues in the construction of morphologically identified Is that what you said? Yes, remember, that term was only construed at the preliminary injunction stage But you conceded infringement That's how you got to deal off your PI And given the construction you conceded infringement, right? No, I don't think we did, your honor There was no concession of infringement on morphologically identifiable cell nucleus under the district court's interpretation In fact, I think the facts as they turn out is even when using DACA's method a significant percentage of their cells even, a significant percentage of their cells I think it's 14 to 20 percent still would meet the definition the narrow definition that the district court gave that term So there would still be terms There was no summary judgment ruling relating to the term morphologically identifiable cell nucleus This was a PI issue only The court never reached that term on summary judgment In fact, there were expert affidavits flying back and forth on summary judgment on that issue which is presumably why the district court did not reach that issue on summary judgment So now with respect to the term heterogeneous mixture of labeled unique nucleic acid fragments The issue is this The district court held that the heterogeneous mixture was comprised only of unique sequences It could not include repetitive sequences But five dependent claims Didn't you argue in response to a rejection that unique sequence of nucleic acid fragments are in contrast with the three dependent sequence of nucleic acid? Your Honor, no We did argue that but that relates to a different issue All that related to is defining what a unique fragment is A unique fragment is a fragment Which the defendants don't have because they have repetitive sequences That's not correct, Your Honor Defendants have in their heterogeneous mixture they have two components One component is a heterogeneous mixture of unique fragments Unique fragments that have different sizes and different base pairs They also have repetitive sequences So they have combinations of repetitive sequences and unique sequences in their heterogeneous mixture The district court ruled that that wouldn't infringe because the term at issue here excludes any situation where you have both unique and repetitive sequences That of course contradicts quite squarely five dependent claims Yeah, but leaving that aside for a moment you started off by talking about what a great invention this was and how monumental it is and it seems to me reading the spec the summary of the invention in the abstract that you said the principal cause of nonspecific binding are repetitive base sequences I mean, it reads as if what you've invented here allows you to get around those It isn't involving unique sequences Why am I wrong? Well, because there are situations where there's two ways to avoid the noise I mean, here's what happened in the prior art In the prior art if you tried to look at a single cell nucleus and you saw a signal in that nucleus you couldn't distinguish between the signal and the noise Say you got ten pieces ten signals You had no way from looking at a single cell to determine whether it was a single signal or noise Now we've come along and for the first time ever when you look at a signal in a single cell you know it's a true signal it's not a false positive and that was really the monumental advance How do we do that? Two ways One is in the prior art the focus was on using homogeneous unique fragments that were all the same Why? Because they figured if you only use one single unique fragment you'd get less noise If you used a bunch of different unique fragments you'd get more noise Well, we went the opposite direction of the art and we decided to use a complex mixture of unique fragments which increased the signal layout But to overcome the problem with increasing the noise we talked about three countermeasures two of which involved eliminating the repetitive sequences from the heterogeneous mix but one of which the blocking method involved having the repetitive sequences in the mix but blocking them So the blocking method comes from an 841 patent blocking those three methods were in the 841, right? They're in both patents The patents share specs They have the same specification Well, I'm not sure the other side agrees with that I guess we'll find out if they do or not Let me ask you You were the ones that added unique sequence to the prosecution history You were facing a 102 rejection and a 112 rejection and it was unclear to me particularly in your great briefs after we bumped with the red-leafed arguments of the prosecution history what is your specific answer to why that term It's this The examiner raised three rejections to the then existing claim 112 rejections and prior 102 rejections The original claim, Your Honor actually covered using labeled repetitive sequences to detect repetitive sequences So in the prosecution the examiner said and he focused on two pieces of prior art Landagen and Montgomery This is it Supplemental Appendix 6613 I urge you to read it What the examiner said is Hey, these two pieces of prior art use labeled repetitive sequences to detect repetitive sequences and your claim is broad enough to cover that So in response we amended our claim to talk about using a heterogeneous mixture of unique segments to detect unique sequences and so we were just saying Listen, we're not covering detecting repetitive sequences we're covering detecting unique sequences and so that's why we did it But that's not what the claim says The claim as it comes out then, having unique sequences isn't limited in the way that you just described, is it? Well, no, it is because now we say in the claim that we are detecting we're using labeled unique fragments to detect unique sequences and that distinguishes the prior art's use of Can you show me that in the claim language? Sure 479 patent Go to claim 1 Hold on That breaks Okay, so we're looking at like, well, column 16 Column 16, right 10, 9, 10, whatever So under A you'll see providing a heterogeneous mixture of labeled unique sequence nucleic acid fragments You see that? Right And then if you go to about two lines down you'll see for which detection is desired You see that? For which detection is desired? Yeah So all we were doing was distinguishing art that used labeled repetitive sequences to detect repetitive sequences And we said, no, no that's not our invention Our invention is using labeled unique to detect unique But in no circumstance did we say that that heterogeneous mixture excluded the possibility of having repetitive sequences in the mixture Not only did we not say that we came along and added claims including claim 12 with states wherein the heterogeneous mixture further comprises repetitive sequences There's five dependent claims that require the inclusion of repetitive sequences Yeah, but you know but our cases I mean, you know unfortunately for you that's not a dispositive necessarily We do not agree with respect to our case law I mean, our case law we talked about we're not going to let the dependent claim tail wag the independent claim the dog and that sort of thing So I understand your point but it's not really dispositive in terms of our case law I actually think it might be dispositive and if it's not dispositive it's a super, super, super presumption Here's why This is not a traditional claim differentiation issue Traditionally what you're looking at is a situation where you have an independent claim and you're asking yourselves whether the dependent limitation should be implicitly incorporated into the independent claim In that circumstance say that happens The dependent stress dependent limitation becomes redundant superfluous but at least the independent claim and the dependent claim are consistent with one another When was Claim 1 amended in relation to the introduction of Claim 12 which probably was an original claim October of 1995 is I believe when we amended the claim and put the unique circumstances and about a year later we added the dependent claims which made it crystal clear that the mixture could include repetitive sequences And when did you do the disclaimer? When was the terminal disclaimer? The terminal disclaimer was right about that time I think it was about a year or so later Remember here that's why this is not a traditional case We have found no case David said no case where this court has ever endorsed construing an independent claim in a way that contradicts an express limitation in a dependent claim That was perfect Well let's hope this isn't the one Can I take you back now to the play between these two cases Let's assume hypothetically then and I asked her a question before I didn't get a clear answer and we didn't get a clear question but let's assume we would agree with you on the heterogeneous mixture but agree with the district court on her construction of morphologically localized Where does that leave us in this case? It gets remanded back down to the district court with a new construction of morphologically identifiable cell nucleus or your construction And then you say there's still a dispute We say there's still a dispute on the infringement question That's right What about are there pending counterclaims It's a weird case because it's up here and there's no point Are there pending counterclaims of invalidity on the heterogeneous issues? I think there's pending counterclaims of invalidity on the claims in both patents I think that's true Doesn't morphologically relate to shape? I would agree with that The dictionary definition of a morph Let's turn to the morphologically identifiable cell nucleus issue But just one last closing point on the heterogeneous mixture before I do if I can test your patience here You want to engage in a repetitive sequence Exactly Your Honor, here's one thing to keep in mind This is not such The district court said we disclaimed heterogeneous mixtures with repetitive sequences The patent office disagrees with that This is a situation where the patent office focused on the dependent claims Here's what the examiner said The proposed amendment to add claims includes limitations directly to disabling repetitive sequences via the blocking nucleic acid method So the examiner absolutely positively recognized we did not disclaim what the district court found that we disclaimed So this should not be the first time in history on this record to hold that an independent claim can be construed to exclude what a dependent claim requires To your question, Your Honor Thank you for your patience The dictionary definition of morphological is a biological organism structured in form That's what it is And that's what We're construing the term morphologically identified Structured in which? It's a biological organism structured in form Structured in form Yeah, that's the dictionary You can pull it up on the internet We are construing the term morphologically identifiable cell nucleus according to its ordinary meaning Identifiable Recognizable That's all The district court has held that in order to be a morphologically identifiable cell nucleus it has to have a full set of chromosomal DNA A lot of things are wrong with that but the first thing and the most obvious thing that's wrong with that is it's absolutely indecisive It cannot be true Why? Under normal conditions when you look at a cell and you're trying to identify with a microscope what amounts to a cell nucleus when that cell is in interphase you can't see the DNA You cannot possibly see it It has the same morphological shape it can irrespective of the particular DNA in there That's exactly what I'm trying It helps you not one way to recognize or identify a cell nucleus by focusing on whether it has a full set of chromosomal DNA or not because you can't see it and Doppler agrees with this Now you remember with their method they use a slicing method they slice the cell so they say for most of their cells and we don't say oh we disagree with all of them but for most of their cells they lose chromosomal DNA Now nevertheless in their product instructions what they tell them is count the cells where nuclear morphology must be intact when evaluated nuclear morphology must be intact when evaluated and disregard cells with poor nuclear morphology so what they're saying is regardless of whether you can see the chromosomal DNA or not you can't they're recognizing that the cells in their system are in fact morphologically identifiable cell in their system with the patent record here's what the examiner said If we disagree with you on the summary judgment of Your Honor Clinchman and affirmed is 1334's denial of a preliminary injunction moot aside from perhaps claim construction issues It's not moot because there's no final judgment and therefore the P.I. remains a live issue but I think Your Honor the way the district court for a lot But it's moot as far as the P.I. is concerned Oh I'm sorry I'm sorry So the case continues Would the case continue and there are patent construction issues If you affirm the summary judgment  of non infringement on both on both on both patents I believe the answer would be that that would moot the P.I. I take that I take that Yeah I take that back There's they have multiple products only two of the products have been finally adjudicated on summary judgment 20 other products have not so it would not moot the P.I. Your Honor Not too out of track this I'm sorry Not too out of track this case Well right now it's easy Two claim construction issues and a FESCO issue That's what we really are here to get a resolution on Now in addition to the fact that we have a recognizable identifiable cell nucleus favoring us I mean look at the patent it's completely consistent What the examiner said when talking about this very term is identifiable cell nuclei are identified by observation of a nuclear membrane in a sample That's what we said Nothing about chromosomal DNA being able to observe it is not a good hybridization So it doesn't have to be a fully intact cell We go on to say in our specification that when you treat the cells ensure there's no unacceptable loss of morphological detail So throughout the patent record recognizes you don't have to have a fully intact cell But here's what's really really dispositive Column 10 Lines 30, 31, and 47 on the patent has a section entitled in situ hybridization and it says this in talking about the methods that are contemplated by this patent it says several excellent guides to the technique are available Where are you in column 10? What line is that? Column 10 30 Line 30 Okay You see what it says? We're talking Yes Okay Several excellent guides to the technique are available And then we cite two articles Gall and Pardue and we also cite Angerer A-N-G-E-R that's spelled line 37 Angerer is all about tissue sectioning exactly what DACO does It's talking about cell slicing where you're clearly going to lose chromosomal DNA from the damage of the cells Here's what Angerer says on page 47 of its article By the way this article is incorporated by reference into the specification so it's as if it's set forth fully and here's what the article says and it's talking about tissue sectioning Sections are usually cut 5-10 microns thick That's what DACO does In our experience paraffin in bedding provides relatively good morphology Relatively good morphology I know we're going to have four minutes I appreciate I appreciate the help I didn't know that Four minutes to get to 25 Moreover there's another reference too that we cite which is we talked about these in our brief the Bugratti article It also talks about slicing cells 5 microns where you're going to lose some chromosomal DNA and what it says is that these cells are identifiable So the patent record is completely consistent with what your gut tells you about the plain meaning of morphologically identifiable cell nucleus We didn't say morphologically intact cell nucleus We said identifiable recognizable and DACO's own product literature recognizes that its cell nuclei are recognizable Now when you're talking about this morphologically identifiable and very early part of the argument about fact matters the fact still be an issue Is that under the prism of that or is that in the construction of the terms that you're talking about? Well clearly the construction of the term remains in dispute Yeah but that is a factual matter right? There is actually a factual dispute as well because at the PI stage we lost from the district court all No but the court this court is sentenced to facts there are no factual matters involved with plain construction purely a legal matter You're absolutely right your honor and I understand not completely what you're saying You're not So what are you saying? All I'm saying is What are you concerned about us not reaching this because of the factual matter? What is it that's concerning you? The court agreed with the district judge's legal interpretation of morphologically identifiable cell nucleus and I said the answer is no the case wouldn't be over because there would remain factual issues to resolve down below not for this court If you agree with my interpretation of morphologically identifiable cell nucleus there is no longer any issue at all on infringement with respect to that You took this case on a certified issue It wasn't a final judgment True right and that's what would be remanded once the plaintiff construction issue is resolved Final festo issue let me take a couple of minutes into my rebuttal Here's the issue There's no literal infringement of the H41 patent because we require Your Honor would you mind telling me my time so I can plan properly You've got a minute and a half You're 25 Thank you No your honor It says that it wasn't that the nucleic acid was the issue but the blocking aspect Well that's that's really the issue There's no literal infringement not because of the blocking aspect of the nucleus Remember there's no dispute at all that DACO uses the same blocking method that are patent sites they just replace DNA with PNA that's all they do So look two things One is festo the festo presumption is supposed to be identified looked at on a limitation by limitation basis So that means you should be focusing on whether the limitation at issue was narrowed Here there's no dispute that they use the blocking method the only dispute is whether PNA is equivalent to DNA You know we say it is but the nucleic acid wasn't narrowed It wasn't ever narrowed It was in there from the beginning Every plant from the beginning of time had nucleic acid in it and we never narrowed we could have for instance we could have used the term blocking component and narrowed it to nucleic acid but we never ever did that So we never narrowed nucleic acid and because we never narrowed nucleic acid there is no festo presumption to overcome The second issue on tangentiality just very briefly look the reality here is there was never any issue in the prosecution history which remotely signaled to anyone and put on anyone's radar screen that we were dealing with the distinction between natural DNA and synthetic DNA It just never happened The only issue before the examiner at the time was distinguishing prior art methods of selection unique fragment only mixtures versus blocking There was never any issue about what you blocked with So it's a completely different aspect of the invention that is an issue here with respect to equivalence and I'll reserve the remainder of my time for rebuttal Before you start would you just check all the connections I did under the desk too Over here? Yeah Did you talk? No Okay Thank you Still says zero Okay Sorry I can do it I can do it the old fashioned way I don't usually have that much time May it please the court Let me begin by correcting one statement that my adversary made during his argument and that question was asked if the summary judgment is firm would that be true? It is true that there are a couple of or several minor products that were not encompassed by the summary judgment as it related to the 841 patent but those products were not an issue in the PI there was only one product that was an issue in the PI the HER2 product Move the PI as far as it goes Yes the PI was only directed to the HER2 product and the summary judgment rulings found no infringement with respect to the HER2 product both as to the 479 patent and as to the 841 patent But on the other question if we were to affirm the PI in the claim construction of my article let me first clarify that the court did not raise that issue as a basis for our summary judgment motion  claim language does appear in both patents the court did not reach that issue Okay and that there's some flier of this question that we respected infringement aspect of that so that we couldn't disclose Yes the appellants did raise argue that there were disputed issues in fact there we don't agree that there are but they certainly were raised below Tell us why unique sequence is not tantamount to free repetitive sequence nucleic acids Why it's free Well your opponent because when that claim language was added the extremely important context which that claim at that point in time just heterogeneous mixture labeled and it did not have any limitation to block and the examiner properly pointed out that that claim as written had no no procedure no structure no composition to disable the repetitive sequences and so they added the unique sequence to overcome that enablement rejection and the only way that that would deal with the repetitive sequence problem is if unique means only unique means no repetitive sequences the invention here really is directed to the problem of if you have a DNA probe that you want to bind to a target how do you make sure that it just binds to the target and not to all the other DNA which has all the repetitive sequences yes your prevailing on this is dependent on our construing the 479 patent to only deal with two of the three methods correct and I mean it's difficult I mean because of the dependent claim it's because I mean one dependent claims and I think one thing I wanted you to respond to is your colleagues reference to this need not being your typical claim differentiation case that here I mean I kind of I see what you say and I want to know if you disagree that here it's not just a matter of differentiation here to construe the patent otherwise to construe the independent claim to just consist of unique sequences would completely vitiate the dependent claim it would vitiate the claim is there a case that you know of in our court where we've allowed that to happen I can't I can't say that there's a case that has addressed that in so many words but in many claim differentiation cases which what we're effectively doing is is reading out plain language and saying that claim really doesn't matter or when you have any type of disclaimer case you can have clear claim language and then during the course of the prosecution history you can disclaim subject matter so this case is no different than those types of cases where something that appears to be claimed in fact is not because it's been disclaimed during the two and a half years after claim one was amended claim one as I said as I said as you pointed out there are three methods claimed here of getting rid of the repetitive sequences two of them really remove the repetitive sequences from the probe mixture one of them deals with blocking and so I look at those as really as two different methods one of them is to get rid of the repetitive sequences the other is to block the repetitive sequences the 841 patent deals with blocking the 479 patent the patent with the heterogeneous mixture of labeled unique sequences gets rid of the repetitive sequences either by in the way you make them or actually pulling them out of the mixture once you make the mixture but you have a probe mixture of just unique sequences no repetitive sequences so it then won't bind to everything else you don't need to block it but if you don't have that if you don't have a unique mixture then you're going to get non-specific binding and you're not going to achieve the objects of the invention that's what the invention is all about there's a terminal disclaimer there was a terminal disclaimer they have the same specification they do have the same specification but here as you describe it the two are entirely different one does one thing the other does the other thing that's correct your honor and that's that's how we read it I mean the one application the blocking nucleic acid patent issued and then at that point not by virtue of a restriction requirement by the examiner but simply by virtue of the applicant deciding that they were going to claim the blocking method in one patent and then they were going to claim the other method of disabling the repetitive sequences in the other patent and that is to use a mixture of unique sequences as I said if you don't get the repetitive sequences out of the mix and you don't have blocking it won't work and the examiner recognized that issued the enablement rejection they came back then and amended the claim said okay we put in unique sequences and you know that was the way they overcame the enablement rejection the examiner came back later and said well I've got a problem with that's exactly what it means it's indefinite and then at that point they came back and they said unique means free of repetitive sequences and then they referred when they said that they cited back to the specification and they cited to the part of the specification which said that preferably the heterogeneous mixture is substantially free of repetitive sequences is morphological related to shape or having the same complement of DNA we think it relates to not just shape but also having intact nucleus in the sense that you have all the chromosomes the chromosomal DNA yes but it has to if you look at the prosecution history and some of the statements that were made in connection with the this terminology they argued that the target DNA is in some biological structure and the features of the structure relevant to the desired measurement are not destroyed and in our case we slice the is a paraffin embedded tissue sample slice it and get a very thin sample and then when you look at it after you've stained it you don't know what you've got there if you're looking through the microscope you can't tell whether you're looking at a partial cell or a whole cell I mean almost all of them are partial cells but if it looks the same you're concluding the invention concludes it is the same well with respect to the morphologically identifiable the invention is about being able to look at a cell and being able to determine whether or not you have extra chromosomes or a missing chromosome or some other  and you can only do that if you have an intact cell to be able to do this in situ hybrid I'm not sure which word you were referring to morphologically well it depends upon what's inside the cell rather than its external appearance in our view it depends on both morphologically means you have to have a cell that includes the chromosome inside now they do talk about mention the fact that the patent talks about some loss of structure but the kinds of loss of structure that we think of in classification is simply some damage to the membrane certainly they're not talking about loss of structure as far as removing chromosomal DNA the only way you can evaluate a cell where you've had a loss of chromosomal DNA is to use multiple probes and then to look at a large section of cells and then count how many probes there are in a certain area and do a ratio of the ones that are binding to the target sequence and the ones that are binding to another sequence and then see if you've got amplification but you can't do it on a cell by cell basis which is what they argued during the course of their prosecution that their method would allow them to do it. I would say you're morphologically different from your opponent but that you have probably 99.99% the same DNA. I hope it's at least that much. If there are not any additional questions then we'll rely on a brief show. Go ahead. Thank you. Just a couple of points. One on the heterogeneous mixture and whether or not there was a clear and unmistakable disclaimer during prosecution. Counsel talked about the exchange that occurred in October of 1995, these three rejections, these three amendments to the claims and there was no discussion of matching them one to another. We have a reasonable clear and unmistakable disclaimer but more importantly you have to look at the entire patent record as it exists when the claims are issued which would include the examiner's summary where he recognized that given our dependent claims the heterogeneous mixture could in fact include repetitive sequences. Let me ask you about that. Sure. Is it clear to you that a clear and unmistakable disavowal is necessary? Assume for a moment that the claim says unique sequences. Assume we don't buy your interpretation of the word of. You've got clear independent claim language saying unique sequences. Why does there have to be an express disavowal in the prosecution history given what the claim says? Well I think if you actually look at the claims as a whole including how the dependent claims help you analyze claim one I don't know how the plain language of the claims could mean anything other than what I say it means because we use the word of in claim one interchangeably with comprises in claim 12. They mean the same thing in the context of these claims so the plain language plainly allows for repetitive sequences which is why the other side is relying on what they've termed a clear and unmistakable disclaimer. An argument that can't be reconciled with the fact that Pat and I was plain in recognizing that we could in fact have repetitive sequences in our heterogeneous mixture. Last final point un-morphologically identified the cell nucleus. Yet the notion that losing some chromosomal DNA somehow takes the cells outside the scope of our claims can't be reconciled with the following. Even when you work with whole cells okay you're not slicing them up like Doc O does you're still going to lose chromosomal    the cell to get access to it for hybridization. You've got to take proteins out. It's in the record essay in the record. You've got to say 9650 slide 15. No matter what method you use you're going to lose some chromosomal DNA so that interpretation of the claims requiring a full set of chromosomal DNA really can't be reconciled with reality. If there are no further questions that's all I have. Thank you, Your Honor. Thank you very much. All rise.